## W. & J. LEO WOLF vs. MERRITT.

Where premises, situate in the city of New York, were demised for a term over six and less than nine months, " *at the yearly rent of* $300, *payable quarterly*," IT WAS HELD, that the time of the first payment of *rent* was not deferred until three months from the date of the lease, but that the rent was payable on the usual quarter days for the payment of rent in the city, happening after the date of the lease.

ERROR from the New York common pleas. Merritt sued the Leo Wolfs for seizing and selling his property under a distress warrant for rent, in which more rent was claimed than was due, and after a tender of the amount actually due. The defendants pleaded *non cul.* The plaintiff produced a *lease,* signed by William Leo Wolf, stating in substance, that the signer on the first day of October, 1835, had demised certain premises, situate in the city of New York, to the plaintiff, up to the first day of May, then next, *at the yearly rent of* $300, *payable quarterly.* The plaintiff also produced a receipt signed by the landlord, dated 6th November, 1835, in which he acknowledged to have received of the plaintiff " the remnant of the rent, viz. for October," specifying the sum of $25 as received for the demised premises. On the second day of *April,* 1836, the property of the defendant was seized under a distress warrant, in which the landlord claimed $90 as the balance of two quarters rent, from 1st October, 1835, to 1st April, 1836. The warrant was signed " For William Leo Wolf, J. Leo Wolf," and J. Leo Wolf directed the levy, which was subsequently approved by W.

Leo Wolf. Besides the above sum of $25, the plaintiff had paid the sum of $35. The distress was made on the 2d April, and on the same day the plaintiff *tendered* to the marshal who made the distress, the sum of $40, in full of rent, interest and costs, which the marshal refused to accept, and on 13th April, sold the plaintiff's property; the sales amounting to $84. The whole case turned upon the construction to be given to the lease as to the *times* of payment. The landlord contended that the rent was payable *quarterly* commencing from the date of the lease; and if his construction is right, there was $90 due to him on the first day of April, after deducting the payments made. The tenant insisted that the lease ought to be construed in reference to the *quarter days*, established by statute, as applicable to the city of New York; and if so, he was liable to pay on the first day of *November* the *one month's rent* then due; on the first day of *February* a full quarter's rent, and on the first day of *May* the remaining quarter's rent; and according to this construction, there was *due* at the time of the distress only *four months rent*, viz. $100, of which $60 had been paid, leaving $40 as the sum for which a distress might legally be made. The presiding judge submitted the construction of the lease to the jury, who adopted the plaintiff's construction, and assessed his damages at $300, at which amount they found a verdict in his favor. The defendants having excepted to the submission of the question of construction to the jury, sued out a writ of error.

*S. Stevens,* for the plaintiffs in error.

*I. Greenwood,* for the defendant in error.

*By the Court,* NELSON, Ch. J. The question involved in the case is, whether the quarterly payments are to be counted from the first of May, preceding the date of the lease, regarding the usual quarter days in the city of New York, and which are fixed also by statute in the absence of any regulation to the contrary; or from the beginning of the term. The court below adopted the former view accord-

ing to which there was only $40, instead of $90 rent in arrear.

The language of the lease is so obscure, that the intent of the parties cannot very satisfactorily be ascertained. It is so much so, that I think it would be wrong to reverse the judgment below, even if we might incline against the view taken of the question by the common pleas. There are cases so nearly balanced and doubtful as to which way the right lies, that different minds may fairly arrive at different conclusions, and upon about the same force of argument. They are not cases for review, nor should they be encouraged.

My own impressions upon reading the lease, are in accordance with those of the court below ; what has mainly influenced them is, that the landlord evidently had in his mind the *whole yearly rent*, giving *that* as the criterion by which to ascertain the rent *per quarter*—" at the yearly rent of $300, payable quarterly ;" and looking at the connection here, and regarding the quarterly payments as controlled in respect to *time*, as it must be conceded they are as to *amount*, by the term yearly rent, they are properly calculated from the *first of May*, that being the beginning of the rent year in the city of New York. 1 R. S. 744, § 1.

Quarterly payments cannot well be applied to a term of *seven months ;* it would require a division of the month to carry it out. And the difficulties are not removed by the construction insisted upon by the counsel for the plaintiffs in error, that the rent became due at the end of each quarter year, beginning with the 1st October. The payments were to be made quarterly. The month beyond the two quarters, upon this view, could not be brought very consistently within this phraseology ; at least, I think, the language more naturally refers the quarter to the usual quarter days for the payment of rent in the city. Then the rent for October falls within the quarter ending the first day of November. The parties themselves seem, originally, so to have understood the agreement, and I think it best supported by the language used.

Though the court below erred in not deciding this as a pure question of law; the error is immaterial, as the jury came to a right conclusion.

Judgment affirmed.